**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL BAIM, for himself and a class, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| M3 FINANCIAL SERVICES INC., | ) |
| Defendant. | ) |

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Michael Baim brings this action to secure redress from unlawful collection practices engaged in by defendant M3 Financial Services Inc. ("M3"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.* ("ICAA"), and the Consumer Fraud Act and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("CFA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 15 U.S.C. §1692k, and 28 U.S.C. §§1331, 1337 and 1367.

3. Venue and personal jurisdiction in this District are proper because:

   (A) Defendant's collection communications were received by plaintiff within this District; and

   (B) Defendant is located within this District.

**PARTIES**

4. Plaintiff Michael Baim is an individual who resides in the Northern District of Illinois.

5. Defendant M3 is an Illinois corporation with offices at 10330 West Roosevelt Road, Suite 200, Westchester, Illinois 60154.

6. M3 operates a collection agency, using the mails and telephone system to collect delinquent debts allegedly owed to others.

1

7. M3 specializes in the collection of medical debts.

8. M3 states on its website (http://www.m3fs.com/m3collect.htm):

M3FS will custom design programs to enhance or replace your in-house collection efforts to increase cash flow while reducing your overhead expenses. Our programs allow management the flexibility to make changes quickly, devote more time to areas of responsibility within the hospital, while enjoying the best recovery rates.

M3FS is fully bonded and licensed collection agency with the State of Illinois and will attempt to recover all monies from third party payors and patients in accordance to Fair Debt Collection Practices Act (FDCPA). [*sic*] We use a combination of letters, phone calls, automated dialers, and skip tracing tools to fully recover open receivables. Healthcare Receivables Management is our only business and our additional interfaces with billing systems, credit bureau service, eligibility and claim status systems are tools that allow M3FS to achieve above average agency performance when compared to the ACA standards.

Our collectors are our asset! It is M3FS' policy to recruit medical collections/billing staff with a verifiable record of accomplishment. M3FS collectors have an average of 10 years or more in medical collections and billing. With our years of healthcare collections and billing experience, M3FS is able to hire and retain the best staff and deliver the best agency performances to our clients.

9. M3 is a debt collector as defined in the FDCPA.

10. M3 held a collection agency license from the state of Illinois, which expired on May 31, 2012 and was not renewed. This is shown in Exhibit A, which reflects the records of the Department of Financial and Professional Regulation as of no earlier than February 1, 2013.

11. M3 continued operating as a collection agency after May 31, 2012, without a license. On information and belief, M3 may have only recently obtained a renewal of its license, but did, for at least eight months, conduct collection activities without one.

## FACTS

*Letter of January 28, 2013*

12. On January 28, 2013, while unlicensed, defendant sent Mr. Baim a collection letter. (Exhibit B.)

13. Exhibit B sought to collect a debt incurred for a personal medical procedure. Defendant claimed that a debt was owed (under a patient number ending in 569, and a reference number ending in 441), in the total amount of $4,313.14. (Full account numbers, and other identifying information, has been redacted.)

14. <u>Exhibit B</u> is an example of a form letter regularly used by defendant while it was unlicensed.

15. Defendant sent <u>Exhibit B</u> to Mr. Baim's workplace, even though prior communications had been directed to plaintiff at home.

16. Such conduct had the effect and, on information and belief, the purpose of informing third parties about the debt.

17. Mr. Baim was embarrassed as a result.

18. <u>Exhibit B</u> threatens suit against Mr. Baim on the alleged debt described in it, even though defendant did not have the right to pursue such a course, or conduct any collection activity in Illinois of any sort, when <u>Exhibit B</u> was sent as it was not licensed.

19. <u>Exhibit B</u> states that defendant is "going to ask for our client's approval to forward your account to our attorney." That attorney, according to the letter, "may, if necessary, initiate a law suite [*sic*] to settle this claim."

20. <u>Exhibit B</u> demands payment to "avoid further collection proceeding."

21. <u>Exhibit B</u> lists a series of harsh consequences resulting from a judgment.

22. <u>Exhibit B</u> states that "the court may order the judgment satisfied out of any assets that may be discovered" – notwithstanding the fact that substantial exemptions can be claimed in post-judgment proceedings. See, *e.g.*, 735 ILCS 5/2-1402 and 5/12-1001.

23. <u>Exhibit B</u> states that "the court may also, where necessary, issue an injunction to prevent the unlawful... conveyance of the defendant's assets and may appoint a receiver to take possession of a debtor's assets and satisfy the judgment out of same." Such remedies are unheard of in consumer debt collection cases, and the showing necessary to obtain such remedies is such that they cannot be used in collection cases.

24. Because defendant did not hold a collection agency license at the time <u>Exhibit B</u> was sent, all of the statements regarding the pursuit of legal action, and the consequences of such a legal action, were totally false.

25. Further, <u>Exhibit B</u> misrepresents defendant's ability, and intent, to cause the

consumer to suffer the overall consequences described in the letter. Such conduct constitutes false, unfair and harassing debt collection conduct.

*Letter of February 22, 2013*

26. In response to Exhibit B, on February 1, 2013, Mr. Baim sent a letter to defendant by fax, disputing the claimed debt and requesting verification of it. (Exhibit C.)

27. No verification was provided in response to Exhibit C. Instead, a further collection letter, dated February 22, 2013, was sent to Mr. Baim. (Exhibit D.) On information and belief, M3 was not licensed as a collection agency by the Department of Financial and Professional Regulation when Exhibit D was sent to Mr. Baim.

28. Exhibit D claimed that $4,473.44 was owed, under several accounts, and demanded full payment to "avoid further collection proceedings." The several accounts on which plaintiff allegedly owed are referred to on the front of Exhibit D with the words "Refer to Back." On the back of Exhibit D there are several account numbers – some showing a zero balance, and some showing a balanced owed. For the line item referring to a patient number ending in 569, and a reference number ending in 441 – the same identification numbers found on Exhibit B – the amount owed was listed as $616.20. Further, the total amount owed is not itemized on the back of Exhibit D, but simply refers to "16 total accts."

29. The difference in the amount claimed between Exhibit B and Exhibit D (sent 21 days apart from each other) was $160.30, or approximately 3.72% over the course of three weeks. This represents an annualized interest rate of approximately 467.66. No justification can be given between the increase between the two collection letters, which necessarily means that the statement of the amount of the debt, in at least one of the letters, was false.

*Illinois licensing provisions*

30. Operating as a collection agency without a license is a crime under Illinois law.

31. 225 ILCS 425/4 provides:

**No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except**

**that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.**

32. The licensing requirements of the ICAA were imposed to protect the public. The public policy represented by the ICAA is stated in 225 ILCS 425/1a:

**The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.**

**It is further declared to be the public policy of this State to protect consumers against debt collection abuse.**

33. 225 ILCS 425/14 and 425/14b make it a crime to engage in the business of a collection agency without a license. It is a Class A misdemeanor for the first offense and a Class 4 felony for subsequent offenses.

34. 225 ILCS 425/14a provides:

**The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.**

35. The Appellate Court has held that legal actions filed by a collection agency that did not have the requisite license are illegal and void, and are not cured by the subsequent obtaining of a license. *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, 952 N.E.2d 1232 (1st Dist. 2011), *leave to appeal denied*, 962 N.E.2d 483 (2011). *Trice*, 952 N.E.2d at 1237, specifically held that a "subsequent registration of the collection agency does not absolve the agency of the crime of debt collection by an unregistered collection agency."

## COUNT I – FDCPA – CLASS CLAIM
## (FALSE CLAIM AS TO ABILITY, OR INTENT, TO SUE)

36. Plaintiff Michael Baim incorporates paragraphs 1-35.

37. Defendant violated 15 U.S.C. §§1692d, 1692d(1), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), and 1692f with respect to all persons to whom it sent a letter in the form represented by Exhibit B, or a letter in the form of Exhibit D, on account of the fact that defendant was not entitled to collect anything from any Illinois resident while it was not properly licensed as a debt collector.

38. Further, the threats contained in Exhibits B & D were harassing, false and unfair for the additional reason that M3 had no intention, or ability, to sue plaintiff and inflict the onerous consequences listed in Exhibit B, regardless of whether it had a current collection agency license.

39. 15 U.S.C. §1692d provides:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The use or threat of use of.... criminal means to harm the... reputation, or property of any person....**

40. 15 U.S.C. §1692e provides:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....**

**(2) The false representation of –**

**(A) the character, amount, or legal status of any debt....**

>    **(4)   The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action....**
>
>    **(5)   The threat to take any action that cannot legally be taken or that is not intended to be taken.... [and]**
>
>    **(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....**

41.    15 U.S.C. §1692f prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

## CLASS ALLEGATIONS

42.    Pursuant to Fed. R. Civ.P. 23(a) and 23(b)(3), plaintiff brings this claim on behalf of a class.

43.    The class consists of all individuals to whom defendant, while not licensed as a collection agency under Illinois law, sent (a) a letter in the form represented by Exhibit B, or (b) a letter in the form of Exhibit D, or (c) both form letters, seeking to collect a health care debt, from June 1, 2012 forward.

44.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the statements on defendant's web site, there are over 40 members of the class.

45.    There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common question is whether Exhibit B, or Exhibit D, or both contain FDCPA violations.

46.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

47.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and collection abuse litigation.

48.    A class action is superior for the fair and efficient adjudication of this matter, in that:

7

  (A)  Individual actions are not economically feasible.

  (B)  Members of the class are likely to be unaware of their rights;

  (C)  There is no reason for multiple identical actions; and

  (D)  Congress contemplated class actions as a means of enforcing the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff Michael Baim and the class, and against defendant,

  (A)  For statutory damages;

  (B)  For attorney's fees, litigation expenses and costs of suit; and

  (C)  For such other relief the Court deems proper.

### COUNT II – FDCPA – INDIVIDUAL CLAIM (CONTACT AT WORKPLACE)

49.  Plaintiff Michael Baim incorporates paragraphs 1-35.

50.  Defendant violated 15 U.S.C. §1692c by sending <u>Exhibit B</u> to plaintiff's place of work rather than his home.

51.  15 U.S.C. §1692c(b) provides:

> **Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector....**

WHEREFORE, the Court should enter judgment in favor of plaintiff Michael Baim against defendant:

  (A)  For actual and statutory damages;

  (B)  For attorney's fees, litigation expenses and costs of suit; and

  (C)  For such other relief as the Court deems proper.

### COUNT III – FDCPA – INDIVIDUAL CLAIM (FALSE STATEMENT OF DEBT AMOUNT)

52.  Plaintiff Michael Baim incorporates paragraphs 1-35.

53.  Defendant violated 15 U.S.C. §1692e and §1692e(10), by failing to accurately state the amount of the debt, either in <u>Exhibit B</u>, or in <u>Exhibit D</u>, or both.

54. Given the difference in the amounts between Exhibit B or Exhibit D, and the fact that the interest rate that would have to apply to justify the increase in the amount of the debt between the two would be outrageously usurious (and therefore extremely improbable), it is evident that at least one statement of the amount of the debt, between the two collection letters, is materially false.

WHEREFORE, the Court should enter judgment in favor of plaintiff Michael Baim against defendant:

    (A)    For actual and statutory damages;

    (B)    For attorney's fees, litigation expenses and costs of suit; and

    (C)    For such other relief as the Court deems proper.

### COUNT IV – CONSUMER FRAUD ACT – CLASS CLAIM

55. Plaintiff Michael Baim incorporates paragraphs 1-35.

56. Defendant's collection activity while unlicensed, as set forth above, constitutes unfair acts and practices in the course of trade and commerce, in violation 815 ILCS 505/2.

57. As alleged in detail within this complaint, defendant continued to operate as a collection agency in Illinois after May 31, 2012, when its prior license expired. As it previously had a collection agency license, it knew that licensure was required, but failed to renew that license. Notwithstanding its lack of a license, if continued to assert (through letters in the form of Exhibit B and Exhibit D, sent to plaintiff and others) that it had the right to collect from consumers, including specifically the right to pursue legal action against consumers. Such conduct by defendant (and employees working on its behalf) while it was unlicensed was fraudulent and unfair, and caused damage to plaintiff and others.

58. Furthermore, defendant never had the intention of filing suit against Mr. Baim, or other consumers, on behalf of any client that it represented, for M3 does not sue consumers (either in its own right or on behalf of its clients). The suggestion that it would actually do so, through its collection letters, constituted fraudulent and unfair conduct. Likewise, M3 was not able, and did not intend, to inflict the onerous consequences listed in Exhibit B upon consumers.

Suggesting that it would was also fraudulent and unfair. This conduct caused damage to those who received defendant's debt collection letters.

59. Defendant's conduct was contrary to public policy, as established by the FDCPA and the ICAA.

60. Defendant's conduct was criminal, for all times during which it was unlicensed.

61. Defendant's conduct was contrived to intimidate and frighten unsophisticated consumers, unnecessarily and without legal justification.

62. Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

63. The receipt of a letter in the form of Exhibit B, or in the form of Exhibit D, from an unlicensed collection agency is an invasion of consumers' rights.

## CLASS ALLEGATIONS

64. Pursuant to Fed. R. Civ.P. 23(a) and 23(b)(3), plaintiff brings this claim on behalf of a class.

65. The class consists of all individuals to whom defendant, while not licensed as a collection agency under Illinois law, sent (a) a letter in the form represented by Exhibit B, or (b) a letter in the form of Exhibit D, or (c) both form letters, seeking to collect a health care debt, from June 1, 2012 forward.

66. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the statements on defendant's web site, there are over 40 members of the class.

67. There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common question is whether defendant's conduct was unfair or fraudulent.

68. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

69. Plaintiff will fairly and adequately represent the class members. Plaintiff has

retained counsel experienced in class actions and collection abuse litigation.

      70.      A class action is superior for the fair and efficient adjudication of this matter, in that:

      (A)      Individual actions are not economically feasible;

      (B)      Members of the class are likely to be unaware of their rights; and

      (C)      There is no reason for multiple identical actions.

WHEREFORE, the Court should enter judgment in favor of plaintiff Michael Baim and the class and against defendant:

      (A)      For appropriate nominal, compensatory and punitive damages;

      (B)      For attorney's fees, litigation expenses and costs of suit; and

      (C)      For such other relief as the Court deems proper.

      /s/ Daniel A. Edelman
      Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                              /s/ Daniel A. Edelman
                                              Daniel A. Edelman

Daniel A. Edelman
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)